## COOPER *vs.* KANE.

Where a contract for the excavation of lots in a city so as to make them conform to a general profile or plan of the corporation, is silent as to the person to whom shall belong the sand or other material taken from the lots ; and a custom exist long established and well known, that the sand, earth or other material removed in making the excavation belongs to the excavator, and not to the owner of the lots, the custom may be shown as evidence of the contract of the parties.

THIS was an action of *replevin,* tried at the Albany circuit in October, 1835, before the Hon. HIRAM DENIO, then one of the circuit judges.

The action was in the *detinet* for detaining a 'quantity of *sand* taken from a lot in the city of Albany belonging to the plaintiff, which the defendant had excavated under a contract with the plaintiff, so as to make the lot conform to a profile or plan of the streets established by the corporation. The contract was in writing ; the defendant was to excavate the lot and make the necessary embankments within a limited time, for which he was to be paid by the plaintiff $180, when the work was done. The defendant completed the job and was paid the stipulated price. Whilst engaged in the work, the defendant placed a large quantity of *sand,* which was taken off of the lot in order to make it conform to the required plan, on an adjoining lot not belonging to the plaintiff, and when requested by the plaintiff to permit her to take it away, he refused such permission ; for this detention the action was brought. There was no stipulation in the contract as to whom the *sand,* taken from the lot in making the excavation, should belong after it was taken off the lot. The defendant then offered to prove a *custom* of the city of Albany which had existed for a great number of years and was well known and understood, that in the excavation of lots, the material excavated belonged to the *excavator* and not to the *owner of the lot,* unless there was an express reservation in the contract to the contrary. The judge rejected the testimony, and instructed the jury, that on the evidence adduced the plaintiff was entitled to

their verdict, who accordingly found a verdict for the plain- NEW-YORK,
tiff with six cents damages, and six cents costs, and assessed May, 1838.
the value of the property at $157. The defendant moves Cooper
for a new trial. The cause was submitted on written ar- v.
guments. Kane.

*C. M. Jenkins,* for the defendant.

*J. Holmes,* for the plaintiff.

*By the Court,* NELSON, Ch. J. I am inclined to the opin-
ion that the evidence of the custom in respect to contracts
like the one out of which this action has arisen, by way of
explaining it, and which was offered by the defendant for that
purpose, was admissible. It did not go to vary any express or
necessarily implied stipulations between the parties therein
contained, but rather to establish what amounted to a complete
performance agreeably to the presumed understanding of the
parties.

Mr. Starkie says, 2 Starkie's Ev. 258, 259, " where par-
ties have not entered into any express and specific contract,
a presumption nevertheless arises, that they meant to con-
tract and to deal according to the general usage, practice
and understanding, if any such exist, in relation to the sub-
ject matter." The same rule of evidence is also recognized
by Phillipps, 1 vol. 420, 421, and Lord Kenyon remark-
ed in *Whitnel* v. *Gratham,* 6 T. R. 398, that evidence of us-
age was admissible to expound a private deed, as well as the
king's charter. The right of carriers, dyers, wharfingers,
&c. to a lien on the goods entrusted to them for their com-
pensation, is frequently established by usage, independently
of the contract. In *Rushforth* v. *Hadfield and others,* 6
East, 519, Lord Ellenborough permitted the defendants
(common carriers) to go into proof of common usage to
detain the goods for a general balance, on the ground of
an implied agreement arising out of it between the parties.
He observed that if there be a general usage of trade to
deal with common carriers in this way, all persons dealing
in the trade are supposed to contract with them upon the

NEW-YORK,
May, 1838,

Cooper
v.
Kane.

footing of the general practice, adopting the general lien into their contract. Lawrence, J. admitted that the lien must be by contract between the parties, but observed that usage of trade was evidence of the contract, and if so long established as to afford a presumption it was commonly known, it was fair to conclude the particular parties contracted with reference to it. In *Kirkman v. Shawcross*, 6 T. R. 14, the dyers, dressers, whisters, printers, &c., of a neighborhood, held a public meeting and entered into an agreement that they would receive no more goods in the way of their trade, except on the condition that they should have a lien on them for a general balance, which was extensively published. The court held that any person who delivered goods to them after notice must be deemed to have assented to the terms prescribed ; and, as we have seen, notice might be inferred from the general notoriety of the terms thus published.

Now, in this case, there is simply an agreement to excavate the earth in a certain street and to make the necessary embankment, according to a map of the corporation, for a given compensation. Nothing is said about the surplus earth, where it is to be laid, or what is to be done with it. Would it be a workmanlike execution of the contract to pile it upon the adjacent bank ? or may the contractor dispose of it as he sees fit, and as most convenient and profitable to himself? It appears to me, the solution of these questions may very well be referred to common usage in such cases, if any exist ; and that if it should be proved as said by Lawrence, J. " it is fair to conclude the particular parties contracted with reference to it." This usage may often have a very important influence upon the minds of the parties as exemplified in this case : for the value of the materials, which the plaintiff has recovered, nearly equals the price of the job. If in fact the usage exists, and the contract was made in reference to it, serious injustice must be the result of upholding the verdict.

New trial granted.